PEARLL v. CITY OF BAY CITY.

1. MUNICIPAL CORPORATIONS—CLAIMS—NOTICE.

The charter provision of the city of Bay City (section 204) requiring claims for injuries sustained by reason of negligence of the municipality to be presented within 30 days after the accident by a notice and affidavit of the claimant, setting up all the facts, names and addresses of witnesses, etc., was substantially complied with by a claimant who filed an affidavit and statement of claim in distinct papers, referring to each other and attached together, the facts as to the nature and extent of plaintiff's injuries appearing in the statement annexed to the affidavit.[1]

2. SAME—NEGLIGENCE.

The court favors a liberal construction of statutes requiring notice of claims to be presented to municipal corporations, and a substantial compliance with this requirement is sufficient.

3. SAME—PLACE OF ACCIDENT—STREET—NAMES.

In giving the name of the street on which plaintiff's injury occurred, plaintiff's notice was sufficient and proper in designating it by the name which was generally employed in the neighborhood and by the local authorities, or given in the directory of the city, even though it was sometimes called by another name and had been previously or originally known by a third one.

4. SAME—EVIDENCE—BAY CITY CHARTER.

Charter provisions requiring plaintiff to state in the notice the names of her witnesses were not so strict as to exclude the testimony of witnesses not known at the time of presenting the notice; the court had a discretionary authority in the premises to admit the evidence of witnesses afterwards discovered.

5. TRIAL—ARGUMENT.

In a personal injury case against a city for negligence as to sidewalks, it was not reversible error on the argument for

---

[1]On the question of notice of claim and cause of injury as condition of municipal liability for defect in highway, generally, see note in 20 L. R. A. (N. S.) 757. And as to the validity of requirement of notice of injury as a condition of municipal liability, see note in 36 L. R. A. (N. S.) 1136.

plaintiff's counsel to refer to the effects of her injury including the loss of a child with which she was pregnant; on objection being made, plaintiff's attorney disclaiming any damages for the loss of the infant.

6. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff's testimony that she was going along the walk not thinking of anything, having no knowledge or notice of the existence of any defect, did not bar her recovery on the ground of contributory negligence when the accident took place at night and the defect was not obvious.[1]

7. SAME—DAMAGES—MEDICAL CARE—EVIDENCE.

Testimony of a physician that he charged plaintiff, a married woman, "probably $50 or $60," but could not give the amount of his bill, supported neither by any books of account, nor by testimony of plaintiff that she employed the physician, was insufficient to sustain a verdict for that amount for medical services: and plaintiff is, for the error in admitting the testimony, required to remit $60 or submit to a new trial.

Error to Bay; Collins, J. Submitted November 12, 1912. (Docket No. 63.) Decided April 8, 1913.

Case by Alberta P. Pearll against the city of Bay City for personal injuries. Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*Edward E. Anneke* (*S. G. Houghton*, of counsel), for appellant.

*Hall & De Foe*, for appellee.

STEERE, C. J. This action was brought by plaintiff, a young married woman, to recover damages for personal injuries sustained in falling upon a defective sidewalk in a street of the defendant municipality. . The case came to trial in the circuit court of Bay county on January 14, 1910, before a jury, resulting in a verdict and judgment for plaintiff for the sum of $800. A motion by defendant for a new trial was denied, and after certain delays and

[1] The authorities on the question of contributory negligence as affecting liability of municipal corporations for defects and obstructions in streets are gathered in an elaborate note in 21 L. R. A. (N. S.) 614.

rejudgments, with interest added, which are unimportant here, the case was regularly removed to this court for review upon a writ of error sued out by defendant.

The principal questions raised by the numerous assignments of error and now urged as ground for reversal are: Sufficiency of the notice and claim for damages served by plaintiff on the city council as a prerequisite to bringing suit, as required by the city charter, which involves also the admissibility of certain testimony allowed by the court against defendant's objections; whether the sufficiency of such notice was a question for the jury or for the court; variance between the proofs and the allegations in plaintiff's notice and declaration; permitting certain witnesses, whose names and addresses were not given in the preliminary notice to the city, to testify at the trial; lack of due care and contributory negligence on the part of plaintiff; certain instructions by the court to the jury as to the measure of damages; refusal of the court to give certain of defendant's requests relative to conditions precedent to liability, and certain alleged prejudicial argument to the jury on the part of plaintiff's counsel.

The testimony is practically undisputed that plaintiff, a married woman about 21 years of age, residing in Bay City, going from her home on an errand to a nearby store, on April 21, 1909, at about 7:45 in the evening, while walking westerly on the wooden sidewalk along the north side of a certain street, situated between Thirty-Ninth and Forty-First streets, tripped and fell heavily, sustaining injuries, and suffered a miscarriage three days later. On May 10, 1909, she, through her attorney, filed with the common council of Bay City her statement of claim for damages in the sum of $5,050, with her affidavit attached, in which is stated, amongst other things, the time, which is not in question, and alleging that the injuries for which claim is made were—

"Received through being tripped, thrown, and falling on a rotten, broken down, and defective sidewalk situate on the north side of Fortieth street about 141 feet east of

the outside walk, on the east side of Ingraham street, in said city."

The names and addresses of nine witnesses, besides herself, are given. The affidavit also states that claimant is—

"Still under the care of her physicians and surgeons named above, and that she is unable to state what the amount of loss and damage will be in the future more definitely than contained in the account hereto annexed."

In her statement of damages attached, she alleges that they arose through injuries received from being tripped and falling on a defective sidewalk—

"Resulting in a miscarriage from pregnancy, bruises and injuries to the left knee and hip, and concussion of the spine, and injury to the back and head."

Section 204 of the city charter of defendant provides, amongst other things, that no action for injuries arising from negligence of the city can be maintained against it unless the party injured shall, within 30 days after the accident, serve on the common council a written notice of claims, setting forth substantially the time when, and place where, the injury occurred, and the extent of the injury so far as then known; also stating, in an affidavit made by the claimant, all facts relating to such personal injury, the names and addresses of all claimant's witnesses, the name of the attending physician, amount of money expended for medical attendance, loss of time and value thereof, and fully describing the nature and extent of the injuries received.

It is contended on behalf of defendant that the notice in this case gave an incorrect and misleading statement as to the place of the accident, the evidence showing it to have been on McGraw avenue and not Fortieth street, as given, and did not sufficiently state the nature and effect of claimant's injuries in the affidavit, as required by the charter. The latter contention is based chiefly on the claim that the statute requires such facts to be set forth fully in the affidavit, and the only description of the al-

leged injuries, showing their nature and extent, appears in the statement of damages attached to the affidavit. The affidavit and statement of claim were attached together and each referred to the other. They were in effect a single instrument, together constituted the completed notice, and should be read and construed together. The purpose of the charter provision is to furnish the municipal authorities promptly with notice that a claim for damages is made, and advise them of the time, place, nature, and result of the alleged accident, and a sufficient statement of the main facts, together with names of witnesses, to direct them to the sources of information that they conveniently may make an investigation. It is said our courts are inclined to favor a liberal construction of these requirements so long as they tend in that direction and are not misleading. In *Ridgeway* v. *City of Escanaba*, 154 Mich. 68 (117 N. W. 550), this court said:

"We have been inclined to favor a liberal construction of statutes requiring notice of claims, and have not denied relief when by any reasonable interpretation the notice could be said to be in substantial compliance with the statute, or where the defect had been waived by the council."

See, also, *Brown* v. *City of Owosso*, 126 Mich. 91 (85 N. W. 256); *Oesterreich* v. *City of Detroit*, 137 Mich. 415 (100 N. W. 593). We regard the contention of defendant in this particular as demanding a more technical construction than is requisite or reasonable under the authorities in this State, and think the notice, taken as a whole, sufficiently complied with the requirements in informing defendant as to the extent and nature of complainant's injuries, so far as then known, and was in substantial harmony with the subsequent testimony in that respect.

Plaintiff testified in detail as to the accident and its results. Of the accident she testifies:

"There was a stringer loose and broken, and in stepping on that my foot slipped down and the other end of the board came up and caught my foot and threw me."

Of the fall and its consequences she testified that she fell heavily, striking the edge of the walk; that the end of her spine and arm struck the hardest; that her arm, back, and hips were hurt and bruised; that she could not rise and lay there for a time calling for help; that she was taken up by others, and carried to a nearby house and later to her home, where a miscarriage followed, and she was confined to her house until June. There was abundant testimony as to the place where she fell, the defective condition of the walk, and the extent of her injuries and suffering for the jury to consider, much of it undisputed.

The defendant's contention that the notice is defective in failing properly to designate the place of the accident is based on the claim that the street where plaintiff's testimony locates it was wrongly named in the notice, being stated as Fortieth street; the correct name being McGraw avenue. Defendant introduced testimony that, after receiving notice of plaintiff's claim, the city attorney and street commissioner went to examine the place of the alleged accident and then learned that it occurred on McGraw avenue, and that the street is so designated on certain maps of that part of the city, made years ago, and in former city directories. The street commissioner testified that he had been connected with the street department 13 or 14 years and knew the street, the fifth south of Cass, "commonly called McGraw avenue or Fortieth street." It was also shown to have been called the Bullock road. The evidence indicates that it has at times been known by each of those three names, but is abundant and convincing that at the time of the accident it was generally known and recognized as Fortieth street, both officially and privately. The city directory of 1909 so designated it. It was so named on the signs, at corners where other streets intersected it, erected and maintained by the city. The nearest corner to where the accident occurred reads "Fortieth street" and "Ingraham street." Mr. Jersey, a witness whose attention was attracted to the accident by hear-

ing plaintiff calling, and looking out of his window saw
her lying where she had fallen, and who first carried her
to his own house, testified that he then lived at 404 For-
tieth street; that—

"This street where the accident occurred, and where I
described the sidewalk, I have heard some of the old-
timers' say they used to call it McGraw avenue there.
* * * People nowadays speak of it, when speaking of
it do not call it that. * * * The city has two signs on
the corner post; that is Fortieth street."

Numerous witnesses living on the street testified that
it was Fortieth street, so known and named and their
homes so numbered; their mail addressed to their proper
numbers on Fortieth street being regularly delivered to
them. An employé of the city, testifying to visiting the
sidewalk in question to "block it up," apparently uncon-
scious of the import of his designation, called it "Fortieth
street."

We regard the evidence overwhelming and convincing
that the name of the street given in the notice was that
which it generally bore, by which it was generally
known, and by which it had been marked and recognized
by the municipal authorities, and that it was properly
designated in the notice. Had it been otherwise named,
as Bullock road or McGraw avenue, defendant could have
contended with much more force that the notice was ob-
scure and insufficient. The court, in view of the testi-
mony offered by the defendant as to the street being oth-
erwise named, left to the jury to determine, as a question
of fact, the correctness and sufficiency of the notice in
that particular. His so doing is alleged as error; it being
urged that it was for the court to construe and determine
the legal effect of the notice and not for the jury. We
find that the court did construe the instrument and in-
structed the jury what its legal effect would be if certain
facts were or were not shown. But whether it was a
question for the court or for the jury becomes unimpor-
tant in this case, for the jury decided it as the court

should have decided it, if we concede the duty devolved on him.

One of the requirements of the sworn notice which the city charter provides must be served on the common council within 30 days after the accident is that "such affidavit shall also state the names and addresses of all claimant's witnesses." Three witnesses whose names were not stated in plaintiff's affidavit were permitted, against objection, to be sworn and testify. This is assigned as error. Plaintiff made a showing under oath that, at the time of serving her notice upon the city, the nine witnesses, whose names were given, were the only ones known to her; that the three witnesses had been away from the city and she learned of them, as witnesses, "just recently." It appeared from the testimony of those witnesses that they resided on the street of the accident, which they called Fortieth street, at the time it occurred, but subsequently removed from the city. Their testimony was cumulative, relating to the name of the street and condition of the walk where plaintiff fell. Counsel for defendant urge that the provision as to giving names of the witnesses is a plain, valid, statutory requirement incident to plaintiff's right of action; that advising the city who her witnesses are is important information to which the city is entitled, and to allow witnesses whose names are not given to be sworn is a clear violation of the statute, and error; and, even if it might seem the provision is unreasonable, that is a question for the legislature and not for the court— citing *Moulter* v. *City of Grand Rapids*, 155 Mich. 165 (118 N. W. 919).

To require the names of all witnesses then known to plaintiff, or those representing her, to be given, seems a fair, practical, and reasonable provision. If it is distinctly manifest the legislature intended that no witnesses subsequently ascertained could testify at the trial, no matter when ascertained or how important their testimony might be, the courts are not at liberty to ignore the provision, however unreasonable it may appear. In criminal prose-

cutions, involving felonious charges, and in which, as a rule, the statutory requirements are more strictly construed than in civil cases, the known names of the people's witnesses are, by statute, required to be indorsed on the information or indictment, when filed, to advise the accused of who will be produced to testify against him. This is held to be an important and substantial right of the prisoner; but it has been construed as allowing the names of additional witnesses, subsequently ascertained, to be indorsed on a proper showing; further time being given to the accused to prepare his defense, if he so requests, and makes a reasonable showing that he is in fairness entitled to it. It can well be questioned if a stricter construction should be put upon a somewhat similar provision in a civil action. The city charter, while it requires the names of the witnesses to be given in the notice, does not declare, unless by implication, that no witnesses shall be sworn upon the trial in plaintiff's behalf unless their names are given. In view of other provisions in the same section, we do not think such a construction is imperative as applied to all conditions. It is required that the claimant shall, in such notice, frankly tell, in a general way, all material things then known, but does not preclude him or her from using subsequently acquired information. It requires the claimant to—

"Set forth substantially the time when, and the place where, such accident or injury occurred, and the manner in which it occurred, and the extent of such injury, as far as the same has become known."

There is no question of bad faith here nor claim that plaintiff did not disclose the names of all her witnesses, so far as the same had become known at the time of filing her claim, which she was required to do within 30 days after the accident. We think it within the discretion of the trial court, on a proper showing, to allow subsequently ascertained witnesses, whose names are not stated in the notice, to testify, giving defendant, if requested, reason-

able further time to prepare to meet their testimony, if taken by surprise. We find no abuse of such discretion in this case.

Counsel for plaintiff, in his argument to the jury, said:

" But the fact remains, gentlemen of the jury, that the evidence in this case was undisputed, that Mrs. Pearll, since that time, has suffered the effects of this injury to her nervous system, headache, nervous disability, and the loss of her child."

To this defendant's counsel excepted as follows:

" I take exception to that remark about the loss of her child."

Following which plaintiff's counsel said:

" I do not claim, gentlemen of the jury, that Mrs. Pearll is entitled to any damage because she lost that."

It was competent to show, under the pleadings, the nature and result of her injuries and the miscarriage as bearing on her physical suffering; and, with the explanation given by counsel to the jury in that connection, there was no reversible error in the argument.

It is claimed plaintiff is shown to have been guilty of contributory negligence by the following question and answer:

"*Q.* Did you exercise any care in going along the sidewalk that night?
"*A.* Well, no, I was just going along, not thinking of anything; was going to the store. I did not have any notice or knowledge that the walk was out of repair."

We do not think the answer, taken in connection with the facts and circumstances proven, shows negligence. It was at night; she did not know of the defect in the walk; it was not noticeable to any one passing along in the usual manner. She was on a public walk, which she had a right to presume was reasonably safe to walk along, with no knowledge of the necessity for unusual precaution, and frankly said that she was just going along to the store

not thinking of anything. The court fully and correctly charged the jury on the question of contributory negligence; and, if there was any evidence of plaintiff's negligence, it was a question of fact for the jury.

While instructing the jury as to the measure of damages, the court said:

"Should you find the plaintiff entitled to recover, she will be entitled to recover as damages such amount as is shown by the evidence to have been expended by her for medical attendance, care, and nursing either charged to her or which has been paid by her. A bill charged to her husband would not come within that rule. Before she can recover for that, she must herself be liable for it, or have paid for it."

Error is assigned on this portion of the charge on the ground that plaintiff was a married woman, and there is no evidence in the case that she paid any sum for medical attendance, etc., or that she had authorized any charge to be made against her personally for such services. This exception to the charge is well founded. The record fails to disclose that plaintiff employed the physicians or agreed to pay them, or that she paid or incurred any expenses for care and nursing. Her testimony is to the effect that she did not. In answer to the inquiry of her counsel on that subject, she denied any knowledge, stating that she did not know whether the doctors charged their bills to her or her husband. One of the physicians testified that he charged his bill to her husband. The only testimony claimed to justify the instruction is that of the other physician, Dr. Swantek, who, in reply to the inquiry by plaintiff's counsel, " To whom did you charge your services as a physician in this case ?" answered, against objections, "To Mrs. Julian Pearll." He did not produce his books, stated he did not have the figures with him, and could not give the amount of his bill; that it was "probably $50 or $60"; that he would get the figures and give the information later, but failed to do so; and nothing further was shown on the subject. This falls far short of making a

*prima facie* case that plaintiff employed him and agreed to pay him. But his randon statement of a bill against her for "probably $50 or $60" was before the jury, against objection, by a ruling of the court, with an instruction, in effect, that, if charged to her, she could recover it. It can well be contended that a part or all of it is included in the verdict. We find no other reversible error in the case.

The most that the jury could possibly have included in their verdict, under any theory, for medical attendance would be $60. This can be remitted by plaintiff. *Gilson v. City of Cadillac*, 134 Mich. 189 (95 N. W. 1084).

In case plaintiff remits this amount within 30 days the case will stand affirmed as to the balance; otherwise the judgment is reversed, and a new trial granted.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.