Mr. Justice Day
delivered the opinion of the Court.
Plaintiffs in error, Shoenberg Farms, Inc., and Rocky Mountain Dairies, Inc. were the defendants below and will be referred to as such. This writ of error is to a district court judgment and mandatory injunction ordering them to comply with certain provisions of a milk marketing order issued by the Colorado Commissioner of Agriculture hereafter referred to as Commissioner. Defendants, in challenging the legality of the court injunction, attack the validity of the marketing order on a number of grounds which will be discussed in the light of the following background.
The Colorado Agricultural Marketing Act of 1939, C.R.S. 1963, 7-3-1 et seq., grants authority to the Commissioner to issue marketing orders to regulate the marketing of agricultural products. By the provisions of C.R.S. 1963, 7-3-8 (10 and 18), the Commissioner is specifically empowered to issue marketing orders “* * * for price posting * * *” and “* * * for the limitation and prevention of unfair methods of competition concerning milk and milk products * *
This court held in Swisher v. Brown, 157 Colo. 378, 402 P.2d 621 that the Agricultural Marketing Act of 1939 is constitutional stating that “* * * [wjhether any particular marketing order is reasonable and adapted to the scope and objects sought to be accomplished” — required a hearing as to the essential facts. (This had not been done in Swisher.)
With the Commissioner’s authority now established by the Swisher decision, the question presented in this writ of error is the validity of the specific marketing order involved in this litigation, to wit: Docket No. A 20 issued and made effective October 3, 1963.
The marketing order provided that each handler and distributor of milk and milk products must file with the *206 Commissioner a complete schedule of its prices, discounts and rebates. Each schedule was required to be uniform and without discrimination to all customers in the marketing area until changed by the filing of a new schedule. By Regulation No. 5, issued December 3, 1963, Colorado was divided into five marketing areas. A deadline of December 13th was set within which to file a complete schedule of prices, discounts, and rebates on milk and milk products with the Commissioner, to become effective on December 16th. Neither defendant, however, filed a schedule.
The manager of the Colorado Milk Administrative Committee, created by the marketing order, filed complaints with the Commissioner of Agriculture charging each of the defendants with violations of the marketing order. At the hearing scheduled on each of the complaints, neither of the defendants participated. Nevertheless the Commissioner proceeded to hear evidence in support of the charges and found that the defendants had violated the milk marketing order in failing to file a schedule of prices, discounts, and rebates and by engaging in the sale of milk and milk products without having filed the required schedules. The Commissioner ordered each of the defendants to comply with the marketing order not later than January 28, 1964. The defendants also failed to obey that order.
The Attorney General brought an action against each defendant in the district court to obtain judicial enforcement of the Commissioner’s orders. The defendants countered with a separate suit seeking relief in the nature of prohibition to prevent enforcement of the Commissioner’s orders insofar as they related to the defendants. All three cases were consolidated for trial.
The trial court found that each defendant had failed to comply with a valid milk marketing order. Both defendants were ordered to file with the Commissioner a schedule of prices, discounts, and rebates, and were enjoined from selling or offering for sale milk or milk *207 products produced in Colorado until such a schedule had been filed with the Commissioner.
Defendants have minutely and painstakingly challenged every procedural step taken by the Commissioner from the time the first rumblings for the need of regulation were heard in the Spring of 1963. At that time a request for an order to regulate the marketing of milk and milk products was presented to the Commissioner from a substantial segment of the milk handlers. After a meeting between the representatives of the milk industry and the Agriculture Department, a tentative marketing order was drafted. Public hearings were held in Denver and Grand Junction on the proposed marketing order and a referendum was conducted in which the industry was invited to vote. With a majority recorded as favoring the order, it was made permanent and issued by the Commission on October 3, 1963.
I.
The results of the referendum are challenged and defendants urge that the marketing order must be declared void because the referendum did not result in a favorable vote by those who handled 50% of the total volume of milk processed or distributed within the State. Of a total of 55 handlers, 51 voted in the referendum with 39 in favor of the marketing order and 12 against it. Those voting favorably had purchased 146,497,122 pounds from producers during the period from January 1 through June 30, 1963. Those voting unfavorably had purchased 39,544,855 pounds of milk during the same period. The four handlers who did not vote had purchased 118,409,058 pounds of milk during the representative period. Therefore, the handlers of a total of 157,953,193 pounds of milk or more than 50% of the volume, did not vote for the order.
First of all we answer that a referendum is not required before issuance of a marketing order for handlers. The referendum in this case was a gratuitous effort on the part of the Commission to sound out the *208 sentiments of the industry. In holding it, the Commissioner was not bound by the result and the subsequent order is not thereby made invalid.
The only provision for referral of an order to a vote is contained in C.R.S. 1963, 7-3-9 (2) (a) which provides that marketing orders directly affecting producers shall not become effective until a referendum in which two-thirds of the producers who participate and who during a representative period have produced two-thirds of the commodity subject to the order, approve such an order. Had the legislature desired similarly to limit the action of the Commissioner in the issuance of handler marketing orders, requirements for a referendum with respect to such orders could have been included, but they were not. The doctrine of expressio unius est ex-clusio alterius applies.
Defendants also argue that a handler order may not be issued by the Commissioner unless a marketing agreement be first rejected by handlers of 50% of the product attempted to be regulated. We find no merit in this argument. C.R.S. 1963, 7-3-9 (1), provides that no marketing agreement directly affecting handlers shall become effective unless at least 50% of the volume of the commodity covered by the agreement and at least 50% of the total number of handlers who are engaged in the operation covered assent to such agreement. This requirement, however, clearly applies only to marketing agreements and not to marketing orders.
C.R.S. 1963, 7-3-9 (3), provides that where there has been a refusal or failure to enter into a marketing agreement by handlers of more than 50% of the volume of the commodity or product to be covered, under such circumstances there are then additional requirements to be met before a marketing order can be issued. However, these requirements apply only where there has been an attempted marketing agreement which has failed to gain the requisite approval. In the case at bar, no *209 such attempt was made to obtain a marketing agreement, and therefore C.R.S. 1963, 7-3-9 (3) does not apply.
Furthermore, the statute clearly provides that marketing agreements and orders are to be issued and administered separately, neither being a prerequisite to the other:
“* * * The execution of such marketing agreement shall in no matter affect the issuance, administration or enforcement of any marketing order provided for in this article. The Commissioner may issue such marketing order without executing a marketing agreement or may execute a marketing agreement without issuing a marketing order covering the same commodity. * * *” C.R.S. 1963, 7-3-5 (4).
II.
Defendants also assert that the milk marketing order is void because it is in violation of the “due process clauses” of the United States and Colorado Constitutions.
 This argument has no validity when a proper dichotomy is made between the dual role played by administrative agencies such as the Department of Agriculture, which exercises quasi-judicial and quasi-legislative powers. Those actions of administrative agencies which are quasi-judicial in nature, involve the determination of juridical facts on which the impact of a law upon an individual depends. Procedural due process requires that an agency when acting in a quasi-judicial capacity give notice and afford a hearing to every affected individual.
 Administrative agencies act in quasi-legislative capacities when pursuant to legislative authority they enact rules or promulgate orders to carry out the purposes of the legislation. It is this administrative function which is involved in the case at bar. Statutes such as the act involved herein sometimes provide for hearings, but the law is clear that where an administrative agency is acting in a quasi-legislative capacity, there is no constitutional requirement that the agency provide the oppor *210 tunity for a hearing to anyone. Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Morgan v. United States, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129; Bi-Metallic Investment Co. v. State Board, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372; 1 Am. Jur.2d Administrative Law § 99.
The United States Supreme Court in Bowles held that the Emergency Price Control Act which delegated authority to the Office of Price Administration to fix fair and reasonable rents without hearing, did not violate due process. The Court pointed out that Congress would not have been required to provide a hearing before it acted, had it decided to fix rents itself, and that Congress need not make that requirement when the task was delegated to an administrative agency.
The court cited Bi-Metallic Investment Co. v. State Board, supra, which involved an appeal from a decision of this court. The issue therein was whether the State Board of Equalization and the Colorado Tax Commission violated due process in increasing the valuation of taxable property in Denver by 40% without a hearing. In holding there was no violation of due process, the court stated as follows:
“Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct vote voice in its adoption. The Constitution does not require all public acts to be done in town meetings or an assembly of the whole. General statutes within the state power are passed that affect a person or property of individuals, sometimes to the point of ruin without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rules.”
We therefore hold that procedural due process does not require notice and hearing where an administrative agency is acting in a quasi-legislative capacity. In so doing, we are fully cognizant of Smith Brothers Cleaners & Dyers, Inc. v. People ex rel. Rogers, 108 Colo. *211 449, 119 P.2d 623. Nevertheless, we hold that insofar as the instant opinion is inconsistent with the language contained in Smith Brothers, which fails to distinguish between the quasi-legislative and quasi-judicial functions of administrative agencies, we expressly overrule the holding therein.
With the foregoing principles in mind, the validity of the Commissioner’s actions in issuing the milk marketing order must be determined not by constitutional due process requirements, but by statutory requirements imposed by the legislature.
There apparently is no contention that the statutory requirements with respect to notice and public hearings set forth in C.R.S. 1963, 7-3-5, were not fully met. Defendants complain, however, that a draft of the proposed order was prepared prior to the public hearings and that after the hearings, change was made in the order before its final publication. Defendants also contend that the Commissioner in drafting the order improperly took into consideration information obtained outside the public hearings.
 There is nothing in the Agricultural Marketing Act which requires that a marketing order be drafted at or following the public hearing. It is inconceivable that a large number of handlers should attend a public hearing without the benefit of any prior preparation. There should be something concrete for them to consider at the hearing. Furthermore, the Act does not require that the final draft of a marketing order be presented at another and final public hearing.
Also after the hearing, the Commissioner should not ignore information available to him from other sources which may bear on the proposed marketing order. In fact, C.R.S. 1963, 7-3-6 (2) (a) requires the Commissioner in making findings with respect to the issuance of a marketing order, to “take into consideration any and all facts available to him * * It is neither reasonable nor desirable that a marketing order *212 should be predicated solely on information obtained at hearings. Defendant’s argument against use of information and material from sources other than at the hearings fails to distinguish the legislative from the judicial process. As has been stated, it is only when the administrative agency acts in a quasi-judicial capacity and is determining the rights and obligations of parties before it, that due process requires the agency’s action to be based upon evidence and facts brought forward in the hearing to the exclusion of other matters of which the agency might have outside knowledge.
III.
Defendants contend the marketing order is invalid because the prerequisite objectives have not been found to exist and are not set forth in the order. C.R.S. 1963, 7-3-6 (1) (a) provides that the Commissioner may issue a marketing order “if he finds and sets forth in such marketing order” that the order will tend to accomplish certain specific objectives. The trial court ruled that the findings of the Commissioner were in substantial compliance with the statute. We agree.
Four specific objectives are set forth in C.R.S. 1963, 7-3-6 (1) (b-e). Although this section is not a model of clarity of expression, the interpretation of it which defendants urge, is not reasonable. They argue the marketing order must be found to attempt to accomplish each and every one of the four specified objectives. It is difficult to conceive a situation in which all four could be accomplished by an order. It is our duty to give reasonable meaning to the statute. Denver Trades Council v. Vail, 103 Colo. 364, 86 P.2d 267. If the legislature had intended that all four of the specified objectives set forth in the statute must be found by the Commissioner, then the conjunction “and” would have been used. Because the conjunction “and” does not appear, we hold that it was the legislative intent that any one or more of the four specified objectives can be found to be in need of accomplishment. There is sufficient compliance with the *213 statutory requirements in this regard. We add that the defendants’ contention that the Commissioner is required to parrot the exact words of the statute in making his findings and setting them forth in the marketing order is also untenable. All that is reasonably required is that the Commissioner’s findings substantially conform to those findings which the statute provides as the basis of the marketing order. There being ample support in the record for the findings made by the Commissioner, the order substantially complied with the statute.
IV.
Another question posed by defendant is: Does the milk marketing order involve an unconstitutional delegation of legislative authority? Defendants say it does in two respects: (a) An improper delegation to the Commissioner to provide for the “limitation and prevention of unfair methods of competition concerning milk and milk products * * * and (b) An improper delegation to the Commissioner giving him authority to define a crime.
Both of these arguments are premature. The only portion of the milk marketing order at issue before the Commissioner and the trial court was that requiring the posting of prices. The defendants were not charged with or found in violation of the portion of the marketing order dealing with unfair methods of competition. Furthermore, the present proceeding was a civil action for an injunction to compel compliance by the defendants with the milk marketing order. The penalty section making violations of marketing order misdemeanors was not involved. And declaratory judgment as to rights and duties under the section of the statute was not sought. Arguments on the improper delegation of legislative authority not properly before this court cannot be dragged in by a side door.
V.
Defendants additionally contend that the milk marketing order is a price fixing order and therefore unconsti *214 tutional. They contend that it also is in violation of the commerce and supremacy clause of the United States Constitution and violates federal anti-trust laws.
There is no provision in the milk marketing order for the fixing of prices at which milk and milk products must be sold. Section VI of the order provides for the posting of prices, discounts, and rebates by handlers and distributors, but there is no specification as to what these prices should be, nor is there a requirement that all handlers and distributors post the same prices. Provisions are included for the changing of prices upon the initiative of handlers and distributors after notice to their competitors and to the Commissioner. Handlers and distributors also may obtain permission from the Commissioner to deviate from posted prices to meet unregulated competition. The order in essence provides only for notice with respect to prices to be used with no restriction as to what they must be, plus the requirement that they must be uniform and without discrimination between customers. The marketing order in no way involves the fixing of prices as contended by defendants.
All of the questions raised by defendants, with regard to the constitutionality of the order because of claimed conflict with the federal anti-trust laws and the commerce and supremacy clauses of the United States Constitution, were answered by the United States Supreme Court in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. That case involved a marketing order issued pursuant to the California Agricultural Prorate Act, an act very similar to the Colorado Agricultural Marketing Act. Suffice it to say that the Supreme Court in Parker found no merit in the same objections to the marketing order raised by the defendants in the case at bar. See E. W. Wiggins Airways, Inc. v. Massachusetts Port Authority, 362 F.2d 52 (1st Cir.), cert. denied, 385 U.S. 947, 87 S.Ct. 320, 17 L.Ed.2d. 226; Allstate Insurance *215 Co. v. Lanier, 361 F.2d 870 (4th Cir.), cert. denied, 385 U.S. 930, 87 S.Ct. 290, 17 L.Ed.2d 212.
VI.
Having disposed of the defendants’ arguments on the validity of the marketing order, we next deal with the proceedings instituted against defendants because of their standing in defiance of the order.
Defendants argue that the notices commencing the actions against them before the Commissioner of Agriculture were legally insufficient, and that therefore the Commissioner and the trial court had no jurisdiction over the parties and the proceedings.
Defendants assume in this argument as well as in other arguments advanced by them that the propriety and legality of the proceedings before the Commissioner and his actions in issuing and administering marketing orders must be judged by reference to the Administrative Code and particularly C.R.S. 1963, 3-16-1, et seq., which set forth a general law.
It is a general rule of statutory construction that a specific statute prevails over a general one. State v. Beckman, 149 Colo. 54, 368 P.2d 793; Burton v. City of Denver, 99 Colo. 207, 61 P.2d 856.
The Administrative Code recognizes this rule in C.R.S. 1963, 3-16-6 “[w]here a specific statutory provision applies to a specific agency, such specific statutory provision shall control as to such agency.” Specific procedural requirements for the issuance and administration of marketing orders are set forth in the Agricultural Marketing Act. That they supersede the general procedure of the Administrative Code is dictated by C.R.S. 1963, 7-3-23, which in pertinent part states:
“It is hereby declared to be the legislative intent that the provisions of this article shall control, to the exclusion of any general law of this state, in conflict therewith * * (Emphasis added.)
Were the statutory proceedings in the Marketing Act followed?
*216 The record shows that the Commissioner complied exactly with the statutory requirements of C.R.S. 1963, 7-3-16(3). Defendants were clearly advised in the notices to them of the legal authority under which the Commissioner was acting, what action by them was alleged to be in violation of the order, and the time and place of the hearing. They were also informed of their right to appear and be represented by counsel and were provided with ample time to prepare for the scheduled hearing.
Defendants argue that the notices to them were deficient because some of the necessary information was contained in a copy of the complaint attached to the notice. There is no merit in this argument. The notice may consist of two or more papers properly attached to each other. Here clearly the complaint was incorporated into the notice and therefore both must be read and construed together. Pearll v. Bay City, 174 Mich. 643, 140 N.W. 938; 66 C.J.S. Notice § 16(a).
Defendants appeared before the Commissioner and moved to dismiss the proceedings upon jurisdictional grounds. They contend that their motion was wholly ignored. The record is to the contrary. The Commissioner considered the motion and denied it and the trial court affirmed the Commissioner’s denial.
VII.
Other grounds in seeking reversal of the trial court judgment are directed to the trial court proceedings. It is first argued by the defendants that the findings of fact and conclusions of law by the trial court were wholly inadequate under the requirements of R.C.P. Colo. 52. The defendants state that the judgment was made “ * * * without finding of fact, sorting of facts, or indication of what appears to the trial court pertinent and what not, and what reasons, if any, exist for the finding.”
On the contrary, we consider the findings and conclusions of the district court to be extensive, detailed, and specific. The trial court first incorporated into its find *217 ings thirty-three separately stated facts as they appeared in the pre-trial order. The trial court then made the factual finding that defendants had not complied with the milk marketing order. Based on these findings, the trial court ruled upon each question of law raised in the pleadings and during the trial proceedings. These conclusions of law are set forth in eight separate paragraphs.
 We stated in Lininger v. Lininger, 138 Colo. 338, 333 P.2d 625, that a trial court need not « => * * comment upon the evidence, setting forth in detail a summary of the * * * testimony; what part thereof the court believed, and what part was disbelieved or given little credence.”
The findings of fact and conclusions of law of the trial court clearly complied with the requirements of Rule 52.
VIII.
Defendants raise technical objections to the trial court’s procedure in rendering a judgment “granting relief as prayed for” and then having the fully detailed injunction prepared, signed and issued at a later date. Defendants contend such procedure violates R.C.P. Colo. 65. They also contend that the injunctions were issued ex parte in violation of R.C.P. Colo. 6 (d).
First, there is no requirement in Rule 65 that an injunction must be included in a written judgment granting injunctive relief. In fact, subsection (g) of Rule 65 clearly contemplates that an injunction may be provided for in a separate document. Rule 65(g) reads as follows: “Relief under this rule may also be granted on the motion of any party at any time after an action is commenced and before or in connection with final judgment.” Rule 65 contains no requirements with respect to judgments. It does set forth what must be contained in an injunction and these requirements were fully met by the court’s injunction.
Defendants also complain that the injunctions were issued, without being reviewed “as to form only” by their counsel. Although the trial court originally *218 asked that the counsel for defendants be given the opportunity to approve the injunction “as to form only,” the trial court changed its mind. It is to be noted that the defendants do not now complain as to the form of the injunction, but only that they had no opportunity to approve the form. They contend that such notice to them is required under Rule 6(d). This rule, however, concerns notice of written motions as to enlargements of time and has no relevance to the issuance of injunctions. Such approval as we have stated, is clearly unnecessary.
IX.
At various points in the defendants’ brief, it is contended that the milk marketing order is void and unconstitutional because it denies equal protection in requiring price posting by them in their retail outlets which sell milk and milk products.
Defendant Rocky Mountain Dairies, for example, operates a group of dairy stores known as Dolly Madison Creameries which sell milk and milk products as well as other products on the retail level. Under the marketing order, Rocky Mountain Dairies must post a schedule of the retail prices with the Commissioner for Dolly Madison, whose operations are also subject to remaining provisions of the marketing order.
It is unnecessary to reach the equal protection argument because we think that the legislature made it clear that it did not intend that marketing orders, agreements, and regulations issued under the Agricultural Marketing Act should cover any retail functions. Therefore the Commissioner exceeded his authority in extending the order to those retail outlets. We think that C.R.S. 1963, 7-3-22, clearly provides that where one operates on more than one level in the distribution of the agricultural commodity which is regulated, the retail level of operation is excluded from any regulation. The statute provides as follows:
“The provisions of this article shall not be applicable to retailers of agricultural commodities except to the *219 extent that any retailer also engaged in' the processing or distribution of agricultural commodities as defined in this article; provided, that all persons acting as producers, handlers, processors or distributors shall conform with all provisions of any applicable marketing order, marketing agreement or regulations issued pursuant to this law before shipping or causing to be shipped any agricultural commodity.”
We construe this statute to apply to retailers only as to any operation they may be engaged in at the processing and distribution level.
Accordingly, the cause is remanded with instructions that the judgment and injunctions heretofore entered be affirmed with modification thereof as to exclude defendants’ retail operations.
Mr. Chief Justice Moore and Mr. Justice Hodges not participating.
Mr. Justice Groves specially concurring.