No. 23143.

JOHN S. CARROLL, HUBERT SAFRAN, AND DAVID HAHN, ON BEHALF OF THEMSELVES AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED *v.* J. RICHARD BARNES, NATIONAL AUTOMOBILE UNDERWRITERS ASSOCIATION AND NATIONAL BUREAU OF CASUALTY UNDERWRITERS.

(455 P.2d 644)

Decided June 9, 1969.

278

279

John S. Carroll, Hubert M. Safran, David Hahn, pro se and for other plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John E. Bush, Assistant, for defendant in error J. Richard Barnes.

White and Steele, Lowell White, for defendants in error National Automobile Underwriters Association and National Bureau of Casualty Underwriters.

*En Banc.*

Mr. Justice Lee delivered the opinion of the Court.

Plaintiffs in error will be referred to herein as "plaintiffs;" defendant in error, J. Richard Barnes, Commissioner of Insurance, as "commissioner;" and defendants in error, National Automobile Underwriters

Association and National Bureau of Casualty Underwriters, collectively as "rating bureaus" or "intervenors," and singly as "NAUA" and "NBCU," respectively.

Plaintiffs by this writ of error seek to reverse the judgment and decree of the Denver district court dismissing their complaint by which they sought to vacate, set aside, and stay the enforcement of the commissioner's order of July 21, 1966, approving casualty insurance rate increases resulting from rate filings by NAUA and NBCU, licensed rating bureaus in the state of Colorado. The controversy, insofar as it related to staying the enforcement of the commissioner's order, has heretofore been determined by this court in *National Automobile Underwriters Association v. District Court,* 160 Colo. 467, 418 P.2d 52.

For a full understanding of the problem to be resolved by this court, a review of the events giving rise to plaintiffs' complaint in the district court is essential.

On May 13, 1966, NBCU filed with the commissioner a rate filing entitled "Proposed Revision of Automobile Liability Rates." On May 16, 1966, NAUA also filed with the commissioner its rate filing entitled "Proposed Automobile Physical Damage Manual Rule, Rate and Premium Revisions." NBCU is a duly licensed rating bureau governed by the provisions of Article 12, Chapter 72, C.R.S. 1963. NAUA likewise is a duly licensed rating bureau governed by the provisions of Article 11, Chapter 72, C.R.S. 1963. The statutory provisions for making rate filings under Articles 11 and 12 are substantially identical. These rate filings were reviewed by the Insurance Department rate analyst's staff and were determined to be properly filed in accordance with the requirements of the Insurance act applicable, C.R.S. 1963, 72-11-3, 4 and 72-12-3, 4.

Pursuant to C.R.S. 1963, 72-11-5 and 72-12-5 (Insurance act), the rate filings were placed on file by the commissioner for public inspection on June 6, 1966, and notice of the filing was duly published. During the fif-

teen-day public inspection period, the commissioner concluded it would be in the public interest to hold a public hearing to determine whether the filings met with the requirements of law. Pursuant to this determination, a hearing was set for July 12, 1966.

The hearing, which took two days to complete, was conducted by the commissioner. Rate experts representing the NBCU and the NAUA testified, as did the rate analyst of the Colorado Insurance Department. Each of these witnesses was cross-examined by plaintiffs, who in turn made statements, sworn and unsworn, into the record. Likewise, the experts were questioned by members of the general public, who were in turn permitted to express their sentiments concerning the subject at hand. At the conclusion of the hearing, the matter of approval or disapproval of the rate filings was taken under consideration by the commissioner. On July 21, 1966, the commissioner approved both filings by written order which provided as follows:

"Based upon the review of the filings and supporting information, investigations and reports of the staff and the evidence presented at the hearing, it is determined by the Commissioner of Insurance that the subject filings have been duly, properly and legally filed; that the statistical basis is sound and accurate; that due consideration has been given to all relevant past and prospective factors within and outside the State of Colorado; that the requested rates provide for a reasonable margin for underwriting profit and contingencies; and that the rates proposed are not excessive, inadequate, or unfairly discriminatory."

Plaintiffs thereupon filed what was denominated as a "Motion for Rehearing" in which they alleged 22 errors. Upon initial consideration of this motion, the commissioner entered an order which recited as follows:

"The Motion for Rehearing has been reviewed by the undersigned, and, in essence, is determined to be conclusory and lacking in specificity. It could be denied on

that sole basis. However, it is the wish of the Commissioner of Insurance to give the objectors additional opportunity to make more specific their objections and the fullest opportunity to make known their views. In furtherance thereof, the objectors may submit in writing to the Commissioner of Insurance on or before 10 days from the date of this order more specific information pertaining to the following: * * *."

There followed 16 interrogatories, answers to which were requested within 10 days. Plaintiffs submitted answers to part of the interrogatories only. The commissioner then denied the motion for rehearing and plaintiffs filed their complaint in the Denver district court, in which they alleged the same 22 errors.

Pursuant to order, the commissioner certified the record of the proceedings, including all exhibits, a transcript of the evidence, and all statements offered at the public hearing.

The court hearing, with the exception of the evidentiary matters relating to motions, consisted of a review of the proceedings before the commissioner, pursuant to C.R.S. 1963, 3-16-5 (Administrative Code), to determine whether the commissioner's action was in conformity therewith.

The district court entered extensive detailed findings and judgment and decree in favor of defendants, sustaining the commissioner's action and dismissing plaintiffs' complaint.

Plaintiffs' brief presents only one general ground upon which reversal is sought. This relates to the manner in which the commissioner conducted the hearing of July 12, 1966.

Plaintiffs' position is that the hearing before the commissioner, here called at his instance before approval or disapproval of the rate filings, was legally a quasi-judicial hearing and as such must be conducted strictly in accordance with the requirements of C.R.S. 1963, 3-16-4 (Administrative Code). If this be the proper in-

terpretation of C.R.S. 1963, 72-11-16 and 72-12-18 (Insurance act), then plaintiffs contend there were many departures from the standards set forth in C.R.S. 1963, 3-16-4 (Administrative Code), which rendered the proceeding unlawful, and the district court was in error in not setting aside the commissioner's order approving the rate filings. On the other hand, if the proceedings be considered as quasi-legislative, plaintiffs admit the proceedings need not be in accord with C.R.S. 1963, 3-16-4 (Administrative Code), and the order of the commissioner approving the rate filings was lawful and the judgment and decree of the district court must be affirmed.

Rate making is essentially a legislative function. *Colorado Interstate Gas Company v. Federal Power Commission*, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206, 1 Am. Jur. 2d *Administrative Law* § 129. The delegation of the rate making function to administrative agencies has long been recognized as a valid delegation of legislative power where standards and guidelines have been promulgated within which such powers are to be exercised. *Hirabayashi v. United States*, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774; *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129. The distinction has been made that the making of rates for the future is legislative, whereas determining the unreasonableness of existing rates or the making of an award for the exaction of an unreasonable rate is adjudicatory. When the making of rates for the future is delegated to an administrative agency, it functions in a quasi-legislative capacity. *Interstate Commerce Commission v. United States*, 289 U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273; *Arizona Grocery Company v. Atchison, T. and S.F. R. Co.*, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; *Ohio Valley Water Co. v. Ben Avon*, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908. For a discussion of the distinction between quasi-legislative and quasi-judicial functions, see *Shoenberg Farms, Inc. v. People ex rel. Swisher*, 166 Colo. 199, 444 P. 2d 277.

■ An examination of our statute pursuant to which the commissioner functioned in the present case reveals a statutory scheme whereby the rates are formulated, not by the commissioner, but by the insurer or a licensed rating organization of which the insurer is a member or a subscriber. C.R.S. 1963, 72-11-4 and 72-12-4 (Insurance act). The commissioner's duties are to approve or disapprove the filings tendered, and to "determine whether they [rate filings] meet the requirements of * * *" Articles 11 and 12 of Chapter 72. The guiding standards are set forth in C.R.S. 1963, 72-11-3 and 72-12-3 (Insurance act). He has the discretion to approve or disapprove, with or without a hearing in the absence of an initial request therefor by the filing insurer or rating organization. C.R.S. 1963, 72-11-5 and 72-12-5 (Insurance act). If he does not approve or disapprove at the expiration of the period of public inspection, the rate filing automatically becomes effective at 12:01 a.m. on the 16th day after placing the rate filing for public inspection. The new rates then go into effect on the future date specified in the rate filing. Thus, it is seen that the new rates may become effective by either tacit or express approval, and in either instance no hearing is required.

However, if the commissioner, after reviewing the rate filings, concludes it to be in the public interest to hold a public hearing to determine whether the filing meets with the requirements of the statute, he has the discretion to order a hearing. Such a hearing was held in the instant case prior to approval of the rate filings by the commissioner.

■ The obvious purpose of a hearing prior to approval by the commissioner is to permit those interested to express their views concerning the ultimate determination to be made by the commissioner that the rates shall not be "excessive, inadequate or unfairly discriminatory." Such a hearing is advisory in aid of the performance of the commissioner's duties under the statute. We are persuaded to this view by the language of the

statute which provides for hearing, procedural and judicial review, C.R.S. 1963, 72-11-16 and 72-12-18 (Insurance act). It is significant that subsections (1) and (2) thereof, concerning hearings held prior to approval or disapproval, on the initiative of the commissioner or at the request of the filing insurer or rating organization, *do not* provide for a hearing in accordance with C.R.S. 1963, 3-16-1 to 3-16-6 (Administrative Code). In contrast, subsections (3) and (4) do provide for such an administrative hearing by "any person aggrieved by the approval by the commissioner * * *" or by "any insurer or rating organization aggrieved by an order or decision of the commissioner * * *."

■■ We hold that when the commissioner of insurance conducts a hearing, either on his own initiative or at the request of a filing insurer or rating organization, *prior* to approval or disapproval by him of the rate filing, he is functioning in a quasi-legislative capacity and the validity of the procedures which he follows is not to be determined by the standards provided in C.R.S. 1963, 3-16-1 to 3-16-6 (Administrative Code). However, if the commissioner holds a hearing pursuant to subsections (3) and (4) of C.R.S. 1963, 72-11-16 and 72-12-18 (Insurance act), upon the application of an "aggrieved" person or an "aggrieved" insurer or rating organization to determine whether he shall "* * * affirm, reverse or modify his previous action * * *," he is then functioning in an adjudicatory or quasi-judicial capacity and the procedures employed by him must conform to the standards prescribed in C.R.S. 1963, 3-16-1 to 3-16-6 (Administrative Code).

■ Although plaintiffs made no allegation in their complaint in the district court concerning the commissioner's failure to grant a "rehearing" as requested by their motion, and likewise have not urged this to be an error for reversal here, we note that such a motion is nowhere provided for in Articles 11 and 12 of Chapter 72. We view the filing of their motion as an attempt to com-

ply with subsections (3) and (4) of C.R.S. 1963, 72-11-16 and 72-12-18 (Insurance act). However, the motion falls far short of being an application by an aggrieved person for a rehearing.

"* * * If the commissioner shall find that the application is made in good faith, that the applicant would be so aggrieved if his grounds are established, and such grounds otherwise justify holding such a hearing, he shall hold a hearing as provided in sections 3-16-1 to 3-16-6."

Nowhere did the motion allege grounds which, if established, would "aggrieve" the plaintiffs. Plaintiffs did not sufficiently respond to the commissioner's request for more specific details in order that he might make this preliminary determination prior to granting a rehearing. Under the circumstances, the commissioner did not abuse his discretion in denying plaintiffs' motion.

We do not agree with plaintiffs' suggestion that our holding here precludes judicial review of the insurance commissioner's action in approving the rate filings. As pointed out, an administrative remedy is available to an aggrieved person, insurer or rating organization, which may thereafter seek judicial review as provided in C.R.S. 1963, 3-16-5 (Administrative Code).

In view of our determination of the single issue raised by plaintiffs, it is unnecessary to consider the various motions of defendants relating to alleged procedural deficiencies in the district court or in connection with the record on error.

The judgment is affirmed.

MR. JUSTICE PRINGLE dissents.

MR. JUSTICE PRINGLE dissenting:

I dissent. In my view, the majority opinion puts form above substance, technicality above logic. As required by the statutes, the parties seeking the increase in insurance rates had filed the requested rates with the Com-

missioner of Insurance. Everybody knew what these rates were. It was the Commissioner's statutory duty, among other things, to determine whether the proposed rates were "excessive, inadequate, or unfairly discriminatory." His duty was not to act as a quasi-legislative body and set rates, but to act as a quasi-judicial body and determine whether the proposed rates were, as we have pointed out, excessive, inadequate or discriminatory. Whether or not he held a hearing, his duty with respect to the filed rates was quasi-judicial.

I cannot, therefore, agree to any interpretation of these statutes which would apply one standard to objections filed to rates, on the ground they are excessive, before the Commissioner approves those rates, and a different standard to the same objections when they are filed after the Commissioner approves the rates.

The very same evidence which would show either reasonableness or excessiveness of the proposed rates would be material and controlling on this issue whether introduced before the Commissioner before his approval of the rates or after his approval. I would not stultify judicial review of the reasonableness or excessiveness of the rates in question by the technical interpretation which the majority today gives to the statute. To me, the situation here resembles the controversy concerning Tweedledum and Tweedledee. I would reverse and order the Commissioner to hold a hearing under the Administrative Code upon the objections already filed rather than require the objectors to file a new protest in order to obtain such a hearing as the majority opinion requires.