The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

John Fiore LUCIANO, Defendant-Appellee. (Two cases)

Nos. 81SA232, 81SA382.

Supreme Court of Colorado, En Banc.

May 2, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Alan R. Beckman, Nathan B. Coats, Asst. Attys. Gen., Litigation Section, Denver, for plaintiff-appellant.

Gerash & Robinson, P.C., Scott H. Robinson, Walter L. Gerash, Denver, for defendant-appellee.

NEIGHBORS, Justice.

These appeals have been filed by the People to obtain appellate review [1] of the judgments of the District Courts for Larimer and Weld Counties dismissing grand jury indictments charging the defendant with fraud in violation of section 39–21–118, C.R.S.1973 (1982 Repl.Vol. 16B),[2] and conspiracy to commit fraud in violation of section 18–2–201, C.R.S.1973 (1978 Repl.Vol. 8).[3] We affirm the decisions of the trial courts.

I.

Each case is before us in a different procedural posture. Therefore, the fact pattern and procedural history of each case will be discussed separately.

1. These appeals have been filed in this court pursuant to the provisions of section 16–12–102, C.R.S.1973 (1978 Repl.Vol. 8), and C.A.R. 4(b).

2. Section 39–21–118 is quoted in part II. of this opinion.

3. The pertinent provisions of the conspiracy statute state:

"18–2–201. Conspiracy. (1) A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime."

## A.

### Case No. 81SA232

The People have appealed the judgment of not guilty entered by the Weld County District Court. The record establishes the following pertinent facts: In the late summer of 1978, Clayton Wayne Miller, Jr. (Miller) and Gary Wayne Brown (Brown) formed a corporation known as Wayne's Investment Corporation which purchased the Library Bar located in Greeley, Colorado. Miller and Brown each owned 50 percent of the corporate stock. Miller and Brown changed the name of the bar to the Country Palace. The bar was operated as a country-western establishment. Immediately after the Country Palace opened for business, it was beset by severe financial difficulties. Within three weeks after Miller and Brown began their ill-fated venture they were "about $10,000 in the hole."

Miller and Brown then contacted the manager of PT's, a nude bar in Denver, to determine if anyone would be interested in purchasing their interest in the Country Palace. The defendant, John Fiore Luciano (Luciano), and William Michael Terranova (Terranova), who is named as a co-defendant in the indictments, contacted Miller and Brown. An agreement was reached among the four parties. Miller refused to accept the arrangement until it was reduced to a written contract by his attorney. Pursuant to the contract, Luciano and Terranova agreed to purchase the liquor inventory and pay all outstanding bills in return for their receiving 75 percent of the corporate stock. Miller and Brown each retained 12½ percent of the stock in the corporation. Luciano and Terranova instructed Miller and Brown not to inform the Department of Revenue of the change in ownership because they were not permitted to have an ownership interest in more than one liquor license. Luciano also told Miller and Brown that the copies of the contract should be destroyed after "they got to know each other."

Under the management of Luciano and Terranova, the name of the bar was changed from the Country Palace to Dirty Dan's. The operation was converted from country-western to topless-bottomless entertainment. The new image of the bar resulted in increased revenue, but also attracted the attention of law enforcement authorities in Weld County who appeared at Dirty Dan's on a regular basis to investigate alleged criminal conduct. Apparently, a search warrant was obtained for the residence of Terranova. The search resulted in the seizure of a copy of the contract showing the interests of Luciano and Terranova in the bar. The grand jury indictments followed.

The Weld County case was tried to the court. Luciano was found not guilty on two grounds. First, the court made a factual determination that the defendant had not violated the statute because asking someone not to disclose a change in ownership of a liquor license "is not a trick, scheme, or device." Second, the court determined that the statute under which the defendant was charged did not apply to the facts of the case. Specifically, the court found that section 39–21–118 is limited by section 39–21–102 to the taxes and charges enumerated in the latter provision and does not apply to violations of the liquor code.

## B.

### Case No. 81SA382

The trial court in Larimer County dismissed the indictment following a hearing on the defendant's motion to dismiss in which he urged dismissal based on the ruling of the Weld County District Court on the question of law. The indictment alleges a scheme similar to that involved in the Weld County case. According to the indictment, Luciano and Terranova directed Donald Underhill (Underhill) to lease Clancy's Show Club Bar from Kenneth Hilt. Pursuant to his agreement with Luciano and Terranova, Underhill obtained the liquor license in his name and represented himself as the only person who had a financial interest in Clancy's. In fact, however, Luciano, Terranova, and John Cerrone each owned a one-third interest in the bar.

## II.

▮ The issue common to both cases and which is dispositive of the People's appeals is whether the prohibition against fraud found in section 39–21–118, C.R.S. 1973 (1982 Repl.Vol. 16B), applies to violations of the liquor code. We hold it does not.

Section 39–21–118 provides:

"**Penalty for fraud.** Any person who, concerning any matter within the jurisdiction of the department, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, makes any false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry is guilty of a class 5 felony and shall be punished as provided in section 18–1–105, C.R.S.1973."

The People argue that the language "concerning any matter within the jurisdiction of the department" contained in the statute is sufficiently broad to permit application of the fraud prohibition to the administration and liquor licensing provisions of title 12, article 47, as well as all other matters within the jurisdiction of the Department of Revenue. However, the scope of the statute is limited and circumscribed by section 39–21–102, C.R.S.1973 (1982 Repl.Vol. 16B), which states:

"**Scope.** Unless otherwise indicated, the provisions of this article apply to income, inheritance, gift, gross ton-mile, passenger-mile, gasoline, special fuel, cigarette, sales, use, and severance taxes and the charge on oil and gas production imposed by articles 22 to 29 of this title, article 60 of title 34, and article 3 of title 42, C.R.S.1973."

▮ Two fundamental rules of statutory construction dictate the result reached in this case. First, under the rule of lenity, criminal statutes are to be strictly construed in favor of the accused. *See, e.g., People v. Lowe,* 660 P.2d 1261 (Colo.1983) (1983, opinion modified April 4, 1983); *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977); *Cokley v. People,* 168 Colo. 280, 450 P.2d 1013 (1969). The "scope" statute clearly limits the language "any matter within the jurisdiction of the department" found in section 39–21–118 to the charges on oil and gas production and taxes enumerated in section 39–21–102. The decisions of the federal courts interpreting 18 U.S.C. § 1001 are inapposite because the federal statutory scheme has no scope provision similar to that found in section 39–21–102.[4]

▮ Second, a specific statute prevails over general legislation. *Motor Vehicle Division v. Dayhoff,* 199 Colo. 363, 609 P.2d 119 (1980); *Shoenberg Farms, Inc. v. People ex rel. Swisher,* 166 Colo. 199, 444 P.2d 277 (1968); *State v. Beckman,* 149 Colo. 54, 368 P.2d 793 (1961); *Burton v. City and County of Denver,* 99 Colo. 207, 61 P.2d 856 (1936). The statutory framework governing alcoholic beverages is known as the Colorado Liquor Code. Sections 12–47–101 to-142, C.R.S.1973 (1982 Supp. & 1978 Repl.Vol. 5). The conduct of the defendant as alleged in the indictments, *i.e.,* having a financial interest in more than one liquor license, is a violation of section 12–47–129(4)(a), C.R.S.

4. The People suggest that section 39–21–118 "is obviously taken from 18 U.S.C. 1001" which states in pertinent part: "Whoever, in any matter within the jurisdiction of any department or agency of the United States...." The People cite no authority for this claim. Section 39–21–118 was adopted by the General Assembly as part of Senate Bill No. 140 in 1977. 1977 Colo.Sess.Laws 1772–73. Our review of the tape recordings of hearings held by the Finance Committee of the Senate and the Finance and Judiciary Committees of the House of Representatives fails to disclose any legislative intent that the provision covers violations of the Colorado Liquor Code. Rather, the legislative history indicates that members of the General Assembly were concerned with the failure of district attorneys in this state to prosecute tax fraud cases. At the time of the hearings, violations of the Colorado tax laws were classified as misdemeanors. A representative from the Department of Revenue testified that prosecutors told him they had more important cases to prosecute. The legislature apparently believed that, by increasing the penalty for tax fraud from a misdemeanor to a class 5 felony, more efforts would be spent by district attorneys in prosecuting white-collar crimes.

1973 (1978 Repl.Vol. 5). All violations of the Colorado Liquor Code are classified as misdemeanors. Section 12–47–130, C.R.S. 1973 (1982 Supp. & 1978 Repl.Vol. 5).

In applying these rules of statutory construction to the facts of these appeals, we are compelled to reach the conclusion that liquor code violations are excluded from coverage under section 39–21–118 by the scope provisions found in section 39–21–102.

### III.

The judgments of the trial courts are affirmed.