No. 26374

**The Public Utilities Commission of the State of Colorado v. The District Court in and for the City and County of Denver, and James C. Flanigan, Judge thereof**

(527 P.2d 233)

Decided September 30, 1974.     Rehearing denied October 29, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Irvin M. Kent, Assistant, Eugene C. Cavaliere, Assistant, James K. Tarpey, Assistant, for petitioner.

Gorsuch, Kirgis, Campbell, Walker and Grover, Leonard M. Campbell, Howard J. Beck, William H. McEwan, for respondents.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

In this original proceeding, the Public Utilities Commission of the State of Colorado (PUC) petitioned this court for relief in the nature of a writ of prohibition. More specifically, the PUC seeks an order from this court requiring the respondent district court to dismiss the pending action in that court in which the Colorado Municipal League (League) is the plaintiff and the PUC and Mountain States Telephone and Telegraph Company (Mountain Bell) are defendants.

We issued a rule to show cause why the relief sought should not be granted. Response has been made on behalf of the respondent district court, briefs have been filed, and oral argument before this court has been conducted. We hold that the respondent district court is without jurisdiction to entertain the pending action in that court and that it should be dismissed. We therefore make the rule absolute.

On March 16, 1973, Mountain Bell filed with the PUC an Advice Letter setting forth higher telephone rates which would produce additional annual revenue of 9.8 million dollars. Under the provisions of C.R.S. 1963, 115-3-4, these higher rates would become effective 30 days after filing unless the PUC suspends them and orders a hearing on the

propriety of the new rates as authorized in 1969 Perm. Supp., C.R.S. 1963, 115-6-11. In this case, the PUC did not suspend and therefore the new rates became effective on April 16, 1973.

Thereafter, the League filed with the PUC an "application for rehearing, reconsideration or reargument," which challenged the PUC's non-suspension and requested immediate suspension of the new rates and a full public hearing on the propriety of the new rates.

The PUC, acting on the theory that its non-action in not suspending the new rates did not constitute a decision under 1969 Perm. Supp., C.R.S. 1963, 115-6-14, refused to consider the application as such. However, rather than dismiss the application outright, the PUC announced that it would consider it to be a complaint and that the League should proceed on that basis before the PUC. 1969 Perm. Supp., C.R.S. 1963, 115-6-8 and 115-6-9 sets forth the complaint procedure to be followed by the PUC and the parties involved.

The League, however, chose not to follow the complaint procedure before the PUC. Rather, it sought judicial intervention by filing its complaint in the respondent district court. The non-suspension by the PUC of the new rates was challenged as being "an abuse of administrative discretion," and an abuse of the PUC's past practices involving similar utilities in similar situations. The relief requested of the respondent district court was an order declaring invalid the new rates until the PUC holds complete and full hearings to determine whether the new rates are warranted.

The PUC filed its motion to dismiss this complaint on the grounds that the respondent district court lacked jurisdiction in the matter. The respondent district court refused to dismiss.

The facts as outlined in the foregoing paragraphs are the significant facts which frame the prime issue of this case. The other suggested issues are ancillary, and because they are without any merit, they will not be discussed.

In this situation, the League's effort to seek judicial intervention lacks any validity. The respondent district court,

under our statutory scheme of public utilities regulation, has no jurisdiction to determine the matter presented to it and therefore it erroneously refused to dismiss the complaint against the named defendants.

In public utilities law, it is a basic concept that rate making is a legislative function and that in Colorado that function has been delegated to the PUC. Consequently, the judiciary must refrain from any semblance of rate making. *Mountain States T. & T. Co. v. Public Utilities Com'n.*, 176 Colo. 457, 491 P.2d 582 (1971) and *Public Utilities Com'n. v. Northwest Water Corp.*, 168 Colo. 154, 451 P.2d 266 (1969).

The obvious purpose and necessary result of the League's complaint in the respondent district court is to require the court to make an initial determination that the new telephone rates may be unwarranted. To accomplish this, testimony and other evidence that the new rates are unreasonable and unjust must of necessity be presented. This is a semblance of rate making over which the district court has no jurisdiction. There is clearly no merit to the contention that the new rates are invalid because the PUC, in not suspending them, improperly permitted them to go into effect without any hearing. Such discretion is delegated to the PUC by the legislature in C.R.S. 1963, 115-3-4 and the discretionary power to suspend is set forth in 1969 Perm. Supp., C.R.S. 1963, 115-6-11.

Under our statutory scheme, the PUC is charged with protecting the interest of the general public from excessive, burdensome rates. The PUC must determine that every rate is "just and reasonable" and that services provided "promote the safety, health, comfort and convenience of its patrons, employees, and the public and shall in all respects be adequate, efficient, just and reasonable." C.R.S. 1963, 115-3-1. The PUC must also consider the reasonableness and fairness of rates so far as the public utility is concerned. It must have adequate revenues for operating expenses and to cover the capital costs of doing business. The revenues must

be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital.

To carry out its function, the PUC hires economists, accountants, and analysts who provide expertise in rate making and regulation.

██ The League was not without remedy to protest the increased rates. Our statutes allow an organization, such as the League, to file a complaint and establish that any new or existing rate does not comply with the statutory mandate. 1969 Perm. Supp., C.R.S. 1963, 115-6-8. Under this procedure, the challenger has the burden of proof which the League claims is onerous. Any change in this concept is up to the legislature. When the PUC decides to suspend the rates and hold hearings, the burden is on the public utility to establish that the proposed rates comply with law. It is the apparent unwillingness of the League to carry this burden which is the essence of this case. Initial nonsuspension of new rates is within the sole prerogative of the PUC, and may not be challenged in court.

██ Therefore, the proper method of challenge for the League would have been by complaint. Unless it exhausts this administrative remedy, it has no basis for district court review as prescribed in 1969 Perm. Supp., C.R.S. 1963, 115-6-15.

Our holding here has a parallel in federal cases pertaining to federal administrative agencies which are charged with rate-making responsibilities. *Carlsen v. United States,* 107 F. Supp. 398 (S.D. N.Y. 1952) involved litigation remarkably similar to the case at hand arising under similar laws. In *Carlsen,* the plaintiff wished to contest the action of the Interstate Commerce Commission (ICC) in allowing revised rates to become effective. Plaintiff's motion to reconsider was treated by the ICC as a complaint, and the plaintiff sought review in the federal district court. In dismissing for want of jurisdiction, that court held:

"The power of suspension of new rates for the limited period

authorized . . . is vested exclusively in the Commission and the Court is without power to review the exercise of administrative discretion."

This principle of law has been reiterated by the United States Supreme Court in *Arrow Transportation Co. v. Southern R. Co.*, 372 U.S. 658, 83 S.Ct. 984, 10 L.Ed.2d 52 (1963) and *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Accordingly, the respondent district court is directed to dismiss the complaint herein.

The rule is made absolute.