PUBLIC SERVICE COMPANY OF
COLORADO, Plaintiff-Appellant,

v.

The PUBLIC UTILITIES COMMISSION
OF the STATE OF COLORADO; Com-
missioners Edythe S. Miller, Daniel E.
Muse and L. Duane Woodard; Vera
Gilde; The Colorado Office of Consum-
er Services; The Concerned Citizens'
Congress of Northeast Denver; The
Colorado Association of Community Or-
ganizations for Reform Now; General
Services Administration; CF & I Steel
Corporation; Colorado Energy Advoca-
cy Office; The Peoples Utility Alliance;
Elbridge Burnham; Harry Eastlond, De-
fendants-Appellees.

and

The COLORADO OFFICE OF CONSUM-
ER SERVICES, Vera Gilde, The Con-
cerned Citizens' Congress of Northeast
Denver and The Colorado Association of
Community Organizations for Reform
Now, Plaintiffs-Appellants,

v.

The PUBLIC UTILITIES COMMISSION
OF the STATE OF COLORADO, Edythe
S. Miller, Daniel E. Muse, L. Duane
Woodard, as Commissioners thereof;
The Public Service Company of Colora-
do; The Colorado Energy Advocacy Of-
fice; The Executive Agencies of the
United States of America (General Serv-
ices Administration); CF & I Steel Cor-
poration, Defendants-Appellees.

Nos. 81SA2, 81SA7.

Supreme Court of Colorado,
En Banc.

Nov. 15, 1982.

Kelly, Stansfield & O'Donnell, James R. McCotter, James K. Tarpey, Kenneth V. Reif, Denver, for plaintiff-appellant, Public Service Co. of Colorado.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., John E. Archibold, Sp. Asst. Atty. Gen., Denver, for The Public Utilities Com'n and Com'rs.

Jeffrey G. Pearson, Denver, for The Colorado Office of Consumer Services.

Kathleen Mullen, Legal Aid Society of Metropolitan Denver, Denver, for Concerned Citizens Congress of Northeast Denver, Vera Gilde and Colorado Ass'n of Community Organizations for Reform Now.

ROVIRA, Justice.

This is an appeal from a district court affirmance of the Colorado Public Utilities Commission's (Commission) grant of emergency rate relief to Public Service Company of Colorado (Public Service or Company). We affirm.

On March 26, 1980, Public Service filed three advice letters with the Commission seeking a $68 million emergency interim rate increase. The Company asserted that despite a rate increase granted four months earlier, continuing inflation and high interest rates had caused such a deterioration of its financial situation that without immediate rate relief construction activity at the Company's Pawnee Plant would have to cease. The level of the requested increase was based on application to 1979 data of the regulatory principles set forth in the Commission's January 22, 1980, decision in Public Service's general rate case (based on a 1978 test period).

The Company requested that the tariffs not be suspended, which would have resulted in their becoming effective after thirty days, or sooner if the Commission so ordered. *See* section 40–3–104(1), C.R.S. 1973. On April 8, 1980, in Decision No. C80–675 the Commission refused the request and established Investigation and Suspension Docket No. 1420. In its order, the Commission limited consideration to two issues: (1) whether the Company was experiencing an operating and financial emergency, and (2) whether the requested rate relief was consistent with the principles established in I. & S. Docket No. 1330, which was the general rate case involving Public Service decided a few months earlier.

After three days of hearings, the Commission, on May 27, 1980, issued Decision No. C80–1039. The Commission concluded that Public Service had demonstrated an emergency, and it granted most of the Company's request ($56.4 million).[1] However, it excluded from the rate increase costs incurred in bond issues in February and March of 1980 on the ground that these costs were outside the test year of 1979.

Public Service and various consumers and consumer organizations led by the Colorado Office of Consumer Services appealed the Commission decision, in two separate ac-

---

1. The Commission found that Public Service's ability to raise capital was impaired; interest rates had substantially increased since the last rate case decision which was based on a 1978 test year, and the Company's ability to incur unsecured debt would be exhausted without rate relief.

tions, to the district court. After ordering the two appeals consolidated, the district court affirmed. The appeal now before us involves the consolidated action—case number 81SA2 is the appeal by Public Service, and case number 81SA7 is the appeal brought by the Colorado Office of Consumer Services and other consumers.

## I.

■ Public Service Company's first argument on appeal is that the Commission erred in declaring that it did not have the authority to allow rates to become effective subject to refund. The Commission also requests that we clarify its power. Because we do not believe that the question is properly postured for appellate review, we decline to decide it.

The point of contention is found in Decision No. C80–675, which established I. & S. Docket No. 1420—the emergency rate case. The Commission recognized the financial straits in which the Company found itself, but stated its reluctance to allow a $68 million rate increase to become effective by operation of law. It went on to state that "[t]he Commission further recognizes that were it to permit Public Service's filings to go into effect without hearings and suspensions, the revenues generated by the increased tariff rates would not be subject to refund." Public Service contends that this is an incorrect statement of the Commission's authority, and asks us to rule that the Commission has the power to allow rates to go into effect without a hearing subject to refund if they are later determined to be improper. The Commission believes that judicial clarification of its authority to permit rates to go into effect, subject to refund after hearing, is appropriate at this time.

The reason for our reluctance to rule on the question is that, at the time the Commission issued Decision No. C80–675, Public Service had not requested that the Commission allow the rates to become effective immediately subject to refund. Although in Public Service's application for reconsideration, reargument, or rehearing of Decisions C80–675 and C80–1039, the Company did raise the issue of the Commission's authority, that issue was not properly raised.

Public Service argues that because an application for rehearing is in the nature of a motion for new trial, the issue was preserved for appeal. The question, however, is not whether an allegation of error was raised at the proper time but whether there was in fact error. Because Public Service had not requested the relief that the Commission stated it was not empowered to grant, the statement was only dictum. Because we generally have no power to issue advisory opinions, *Cameron v. Carroll & Co.*, 138 Colo. 432, 334 P.2d 748 (1959), the statement of the Commission is not reviewable. *See North Eastern Motor Freight, Inc. v. Public Utilities Commission*, 178 Colo. 433, 498 P.2d 923 (1972).

## II.

■ Public Service next argues that the Commission erred in failing to take into account the costs incurred in connection with its February and March 1980 bond financing. The sale of these bonds increased the embedded cost of debt to 7.63% from a 1979 year-end level of 6.94%. The Commission concluded that the 1979 year-end embedded cost of debt should be used in its determination of the overall rate of return, because use of out-of-period adjustments was not appropriate under the regulatory principles established in I. & S. No. 1330. The result of the Commission's refusal to consider the out-of-period financing was to decrease the Company's revenue requirements by $10 million.

Public Service Company advances two lines of reasoning to support its conclusion that the Commission erred in not considering the out-of-period costs. First, it argues that the Commission erred in concluding that it was foreclosed from considering out-of-period costs merely because none were included in I. & S. No. 1330. Second, it argues that, when considered on the merits, the adjustment for out-of-period debt financing costs was appropriate.

With respect to the first argument, an interpretation by the Commission of its own decisions is entitled to great deference. In *McKenna v. Nigro,* 150 Colo. 335, 372 P.2d 744 (1962), we held that the interpretation by the Commission of its own language in a certificate of convenience and necessity must be given great weight and a reviewing court is not to interfere unless such interpretation is "clearly erroneous, arbitrary or in excess of its jurisdiction." 150 Colo. at 337, 372 P.2d at 745. The same considerations apply to the Commission's interpretation of the language of its decisions. We do not believe that the Commission's interpretation of I. & S. No. 1330 as precluding consideration of out-of-period debt costs was clearly erroneous, so we decline to reverse on that basis.

■ As to the Company's second argument, we may assume, without deciding, that the Company is correct in its assertion that when considered on its merits an adjustment for out-of-period costs would have been "appropriate." That does not, however, dispose of the question of the propriety of the Commission's decision not to include them. Merely because one alternative is appropriate, the other alternative is not, *ipso facto,* inappropriate. As we stated in *City of Montrose v. Public Utilities Commission,* 629 P.2d 619, 623 (Colo.1980), "when two equally reasonable courses of action are open to the Commission, the reviewing court cannot substitute its judgment for that of the Commission in selecting the appropriate alternative." *See also Contact-Colorado Springs, Inc. v. Mobile Radio Telephone Service, Inc.,* 191 Colo. 180, 551 P.2d 203 (1976).

It is axiomatic that rate-making is "not an exact science but a legislative function involving many questions of judgment and discretion." *City of Montrose,* 629 P.2d at 623; *Colorado Ute Electric Association v. Public Utilities Commission,* 198 Colo. 534, 539, 602 P.2d 861, 864 (1979). In *Colorado Ute, supra,* we held that it was not an abuse of discretion for the Commission to make out-of-period adjustments to reduce certain test year expenses, but not to make corre-

sponding adjustments for items that had increased costs. We stated that although the Commission's decision might at first glance appear arbitrary, "it must be remembered that the legislature has vested the Commission with considerable discretion in its choice of the means used to fix rates." 198 Colo. at 539, 602 P.2d at 864. We do not believe that the Commission's refusal to allow out-of-period costs in the case before us constitutes an abuse of its broad discretion.

### III.

We now turn to the issues raised by the Colorado Office of Consumer Services and other consumer appellants. Their first contention is that the Commission deprived them of their statutory right to be heard, examine and cross-examine witnesses, and introduce evidence, thereby depriving them of due process of law under both state and federal constitutions. They argue that the abbreviated time period for the proceedings and the limitation of issues to be considered did not give them adequate time to prepare and restricted the kind of evidence they could present. This argument presents both constitutional and statutory questions.

■ In order to find a violation of procedural due process rights in this case, we must conclude that there is a protected property interest at stake. In *Denver Welfare Rights Organization v. Public Utilities Commission,* 190 Colo. 329, 547 P.2d 239 (1976), where the issue was whether a utility customer had a right to a hearing before utility service was terminated for nonpayment, we held that uninterrupted continuation of utility service is a protected interest within the ambit of the due process clause of the Fourteenth Amendment and article II, section 25, of the Colorado Constitution. *See also Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). We found the customers' interests in receiving utility service to be at least as significant as other "entitlements" recognized by the United States Supreme Court. *See, e.g., Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90

(1971) (driver's license); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare benefits). To have a property interest in a benefit, a person must have "more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Consequently, in order to find that appellants have stated a constitutional claim, we must conclude that they have a legitimate claim of entitlement to continued utility service *at the same price.* We do not believe that this interest is as significant as the bare right to receive utility service. Therefore, we decline to find such an entitlement.[2]

■ We now turn to consumer-appellants' argument that they were deprived of their statutory procedural rights. In order to address this question fully, an examination of the general statutory plan for ratemaking is necessary.

Colorado has a "file and suspend" system of public utility ratemaking. The procedure is initiated by the utility's filing of tariffs with the Commission setting forth the proposed new rates. If the Commission does not suspend the rates, they go into effect automatically in thirty days, or in a lesser time if the Commission so orders. Section 40–6–111(2), C.R.S. 1973. *See Public Utilities Commission v. District Court,* 186 Colo. 278, 527 P.2d 233 (1974). The Commission may, however, order a hearing and suspend the tariffs for two periods not exceeding an aggregate of 210 days. If a hearing is ordered, all parties are "entitled to be heard, examine and cross-examine witnesses, and introduce evidence." Section 40–6–109(1), C.R.S. 1973.

The gravamen of appellants' statutory claim is that because of the abbreviated nature of the proceeding and the limitation on issues to be considered, the hearing was not "granted at a meaningful time and in a meaningful manner." [3] *See Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Appellants argue that they did not have adequate time to conduct discovery and procure the expert witnesses they needed, because the hearing began only sixteen days after the Commission's order of suspension. However, Public Service filed its advice letters almost two weeks prior to the Commission's suspension order, giving an additional two weeks' notice. While this is not a large amount of time, restriction of the scope of the hearing ameliorated to some degree the prejudice to appellants resulting from the short time period.

Appellants also do not appear to have been substantially prejudiced by restriction of the issues to the existence of an emergency and implementation of the principles established in I. & S. Docket No. 1330. It should be further noted that a general rate proceeding had concluded two months earlier and another had been initiated prior to the Commission's decision in the case before us. At these hearings, appellants had full opportunity to contest all aspects of the Company's rates, as the scope of these hearings was not limited.

Appellants seem to be arguing that whenever the Commission holds a hearing on a proposed rate increase, the proceeding must be a "full-blown" hearing—that is, all issues concerning the establishment of the utility's rates must be considered.[4] Appel-

---

**2.** Of course, even if we were to find such an entitlement, that would not dispose of the issue of whether there had been a violation of due process rights. We would then examine the procedures used to determine whether they satisfied the requirements of due process. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**3.** The Commission framed the issues to be considered as follows: (1) Did the advice letters filed with the Commission by Public Service, in fact, implement the regulatory principles estab-

lished in Investigation and Suspension Docket No. 1330? and (2) Do the emergency financial conditions outlined by Public Service in its advice letters justify accelerated relief?

**4.** These issues include, among others, rate of return, the value of the utility's property, whether the property is "used and useful" and can therefore be included in the rate base, the treatment of construction work in progress and allowance for funds used during construction, and the current cost of capital.

lants claim that they were denied the opportunity to challenge anything but the issues to which the hearing was limited. They did, however, have an opportunity to participate in the I. & S. Docket No. 1330 proceeding which lasted 182 days and established the principles relied on in the No. 1420 proceeding. Moreover, they also had an opportunity to participate in the No. 1425 hearing—another general rate hearing which was scheduled for hearing prior to the decision in the No. 1420 proceeding.

We do not consider it wise to limit the Commission's discretion in the manner urged by appellants. Under section 40–6–111(2), C.R.S. 1973, the Commission is not required to suspend the tariffs and hold a hearing. It can do nothing, in which event the rates become effective thirty days from the time of filing, or it can order the rates to become effective immediately. We decline to impose an "all or nothing" requirement upon the Commission. In this case, the Commission expressed its unwillingness to allow a $68 million increase to go into effect by mere operation of law because of "the serious effect of jeopardizing important participatory values." The Commission stated:

> "The economic climate in general, and particular circumstances of Public Service itself, do not confront this Commission with what might be considered a normal economic picture. The Commission must deal with economic reality, and it would be derelict in its responsibility if it did not fashion the procedural mechanisms available to it so as to minimize, to the extent possible, harmful economic results."

This is a reasonable accommodation of the Commission's dual responsibility of protecting the general public from excessive and burdensome rates, while at the same time ensuring that the utility's revenues are sufficient to assure confidence in the financial integrity of the Company, so as to maintain its credit and attract capital. *See Public Utilities Commission v. District Court, supra.*

An "all or nothing" approach is not in the public interest. If the Commission believes, as it did in this case, that an economic emergency may exist, and if it knows that a hearing would not result in a decision for many months, it might be more inclined to allow the rates to become effective without a hearing. Then instead of hearing evidence on both sides of the issues and deciding on that basis, the Commission would be in the position of determining whether to allow the requested rates to become effective automatically solely on the basis that the utility had made out a *prima facie* case of an emergency in its advice letters. Participatory values are better served by allowing the Commission to conform its procedures to the exigencies of the case before it. Consequently, we do not believe that the Commission erred in adopting its abbreviated procedure and limiting the issues to be considered.

## V.

■ Consumer-appellants' final argument is that the Commission's conclusion that the Company faced an emergency warranting rate relief was not in accordance with the evidence. In resolving this claim, we note at the outset that the scope of our review of a factual determination by the Commission is extremely limited. *Mobile Pre-Mix Transit, Inc. v. Public Utilities Commission,* Colo., 618 P.2d 663 (1980). So long as there is adequate evidence in the record to support the decision, we will not disturb the Commission's findings, regardless of whether we would have reached the same conclusion were we the trier of fact. *Id.; Mountain States Telephone & Telegraph Co. v. Public Utilities Commission,* 180 Colo. 74, 502 P.2d 945 (1972).

■ A review of the record reveals sufficient competent evidence to support the Commission's finding of an emergency. Testimony was taken to show that Public Service's ability to raise capital was seriously impaired due to decreased earnings and a downgrading of Public Service's rating by both Moody's and Standard & Poors. Moreover, of the top 100 utilities in the country,

Public Service ranked 97th in terms of return on equity, with an average return of only 7.7%, compared with a median return for all 100 utilities surveyed of 12.8%.

Evidence was also introduced to show that continued construction of the Pawnee Power Plant would be jeopardized in the absence of the requested rate relief and that delay in construction would cost the utility millions of dollars. Appellants argue that Public Service failed to prove that Pawnee could not be completed absent emergency relief because it did not demonstrate that construction could not be deferred at other projects, thus freeing funds for use on the Pawnee project. However, there was testimony that diverting funds from other construction projects would not be feasible, and the Commission found no credible evidence to support appellants' position. The Commission also stated that "it must be recognized that intervening parties have no authority to rearrange the construction schedules of the utility. In other words, no legal authority exists for intervening parties to act in the role of 'over-the-shoulder supermanagers.'" The Commission noted that although it has general supervisory powers to correct managerial abuses of discretion, the management of the utility belongs to the Company. The Commission stated that the legal prerequisite to the exercise of its power over management is the finding that there has been an abuse of managerial discretion. *See Colorado Municipal League v. Public Utilities Commission,* 172 Colo. 188, 473 P.2d 960 (1970). It concluded that there was nothing in the record to support such a finding. We agree.

In conclusion, we believe that there was sufficient evidence to support the Commission's conclusion that an emergency existed and financial relief was warranted.

The judgment is affirmed.