**D & B ENTERPRISES, INC. d/b/a Design Drywall Specialties and Darrell Dinkel, Petitioners–Appellants,**

v.

**COMMISSIONER OF INSURANCE, Respondent–Appellee.**

**No. 95CA1907.**

Colorado Court of Appeals, Div. IV.

May 30, 1996.

Opinion by Judge DAVIDSON.

In this administrative action concerning the application of new rates for workers' compensation insurance, petitioners', D & B Enterprises, Inc., d/b/a Design Drywall Specialties and Darrell Dinkel, appeal from a determination of the Commissioner of Insurance (commissioner) denying them a quasi-judicial hearing. We affirm.

On August 1, 1995, the National Council on Compensation Insurance (NCCI), a licensed rating organization, submitted a workers' compensation loss cost and rating values filing to the Colorado Division of Insurance, proposing an average 8.6% decrease in workers' compensation rates which resulted in a 27.7% decrease in rates for petitioners' principal business category.

Pursuant to § 10–4–406, C.R.S. (1994 Repl. Vol. 4A), the commissioner placed the rate filing on public inspection, held a public hearing, and commissioned an independent expert to review the filing. Petitioners corresponded with the commissioner about the rate filing both before and after the public hearing and testified at the hearing. Whether the new rate would be applied only to policies as they were initiated or renewed, rather than to all outstanding policies, was the principal issue in contention at the hearing.

On October 11, 1995, the commissioner approved the rate filing to be effective December 1, 1995, for only new and renewal policies, as requested by NCCI. *See* § 10–4–405(2)(a), C.R.S. (1994 Repl.Vol. 4A) (requiring every filing to state a proposed effective date).

On October 17, 1995, pursuant to § 10–4–407(3), C.R.S. (1994 Repl.Vol. 4A), petitioners requested a quasi-judicial hearing before the commissioner, contending that failure to make the new rates applicable to outstanding policies disadvantaged them compared to other policy holders. The commissioner denied petitioners' request for a hearing, finding that "the grounds asserted by [petitioners] do not justify holding a further hearing in this matter." This appeal followed.

Berry & Singer, John Berry, Denver, Law Offices of David S. Oppenheim, David S. Oppenheim, Greenwood Village, for Petitioners–Appellants.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Robert M. Howard, Senior Assistant Attorney General, Denver, for Respondent–Appellee.

## I.

Petitioners' primary contention is that the commissioner erred in denying them a hearing in violation of § 10–4–407(3) of the insurance code. The insurance code provides for two types of hearings—a quasi-legislative, public hearing to evaluate rate filings, and an individual, quasi-judicial hearing. *See* §§ 10–4–407(1) and 10–4–407(3), C.R.S. (1994 Repl. Vol. 4A).

Section 10–4–407(3) provides that:

Any person aggrieved by the approval by the commissioner of a rate filing may make written application to the commissioner for a hearing thereon, and *such application shall specify the grounds to be relied upon* by the applicant. If the commissioner finds that the application is *made in good faith,* that the *applicant would be so aggrieved* if his grounds are established, *and that such grounds otherwise justify holding such a hearing,* he shall hold a hearing .... (emphasis added)

### A.

Initially, petitioners assert that, because they fit the statutory definition of "aggrieved" persons, the commissioner improperly denied them a hearing under this provision. We disagree.

■ By its terms, the statute requires the commissioner to hold a hearing if three conditions are satisfied: The request must be made in good faith, must be by an aggrieved person, and must be based on grounds that would justify a hearing. In requesting a hearing pursuant to § 10–4–407(3), an aggrieved party must specify "the grounds to be relied upon" at the hearing. The commissioner must grant a hearing if those grounds "otherwise justify holding such a hearing."

■ Here, the commissioner's order did not question petitioners' good faith or dispute their status as "aggrieved," but rather found that petitioners' grounds otherwise did not justify a hearing. Because the statute provides for a hearing only if all three criteria are met, the commissioner did not err in denying the hearing simply because petitioners may have met the statutory definition of "aggrieved."

### B.

■ Even so, petitioners assert, the commissioner was arbitrary and capricious in his determination that their request for a hearing lacked sufficient grounds. We disagree.

Here, in their request for a hearing, petitioners asserted that the commissioner's approval of the rate filing put them at a competitive disadvantage with respect to other policy holders. Specifically, because the new lower rate will be applied only to new and renewal policies, the lower rates will not apply to them until their policy is renewed on October 1, 1996. Consequently, they alleged, for the same annual insurance, they will pay over $180,000 more than an employer that can take advantage of the new rate as of December 1, 1995.

In his order determining that this contention did not justify holding a further hearing, the commissioner accepted the factual allegations which were the basis of petitioners' grievance. These factual allegations also were not in dispute at the public hearing.

Further, this same issue—whether the new rates should apply to outstanding policies—already had been fully evaluated by the commissioner, considering both written comments and testimony at the public hearing. *See State Farm Mutual Automobile Insurance Co. v. City of Lakewood,* 788 P.2d 808 (Colo.1990) (quasi-legislative action is of general application and involves balancing of questions of judgment and discretion); *Carroll v. Barnes,* 169 Colo. 277, 455 P.2d 644 (1969) (rate-making is quasi-legislative).

Thus, petitioners' application did not appear to assert anything new, in fact or law, to provide a basis for a further hearing. *See Weinberger.v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973) (an agency can deny statutorily required hearing when there are no disputed issues of material fact).

Nevertheless, arguing with more specificity, petitioners claim that, by inadvertently creating different insurance rates for similarly situated policy holders, the commissioner's

rate filing approval order unfairly discriminated against them in violation of both § 10–4–403(1), C.R.S. (1994 Repl.Vol. 4A) and the constitutional guarantee of equal protection. Thus, they contend that a further hearing is required because the commissioner cannot legally approve a filing that implements a new rate only as policies are initiated or renewed. We reject these assertions as a matter of law and therefore conclude that no further hearing before the commissioner is required.

### 1.

■ First, petitioners contend, because the filing approved by the commissioner is effective only as to new and renewal policies, it is unfairly discriminatory. We disagree.

As an initial matter, we note that, within a particular insurance category, the approved filing does not allow insurers to charge different rates in policies or contracts of insurance that will be entered into under the new filing. The approved filing merely prevents the new rates from being retroactively imposed on existing insurance contracts. This limitation on application of new rates is consistent with the statute which defines "unfair discrimination" in rates in terms of "price differentials" of rates which do not equitably reflect differences in expected losses and expenses, § 10–4–403(1)(c), C.R.S (1994 Repl. Vol. 4A), and discrimination in "rates charged for any policy or contract of insurance." Section 10–3–1104(1)(f)(II), C.R.S. (1994 Repl.Vol. 4A).

Furthermore, the statute specifies the criteria the commissioner must consider in determining whether the rates comply with the unfair discrimination standard. See § 10–4–403(2)(a), C.R.S. (1994 Repl.Vol. 4A). Neither the effective date of a filing nor the method of implementation of rates—whether rates are phased in as policies are initiated and renewed, or whether rates are applied retroactively—is addressed by the mandatory criteria for evaluating "unfairness" under the statute. Thus, how the rate is implemented does not appear to be directly relevant to the narrow question whether the rate itself is "unfairly discriminatory" pursuant to the statute.

Furthermore, while the statute does not specify whether a filing is to apply to policies as they are initiated or renewed, the continuous or phased implementation of new rates approved by the commissioner is not inconsistent with the statutory requirement that the effective date of the filing be "such subsequent date as may be satisfactory to the commissioner and the insurer or rating organization that made the filing." See §§ 10–4–406(5)(a) and 10–4–407(2), C.R.S. (1994 Repl. Vol. 4A); cf. North Colorado Medical Center, Inc. v. Committee on Anticompetitive Conduct, 914 P.2d 902 (Colo.1996) (interpretation of a statute by the agency charged with enforcement is generally entitled to deference).

Moreover, inasmuch as the statute requires the commissioner to balance a variety of factors in evaluating a rate filing, we perceive no fundamental unfairness in his approval of the filing at issue. See Cottrell v. City & County of Denver, 636 P.2d 703 (Colo. 1981) (rate-making is a legislative function, requiring balancing of many questions of judgment and discretion).

The commissioner is charged with regulating rates to ensure not only that they are not unfairly discriminatory, but that they are neither "excessive" nor "inadequate," and that rates are "responsive to competitive marketing conditions." Section 10–4–401(1), C.R.S. (1994 Repl.Vol. 4A). Further, rates must be set to "improve the availability and reliability of insurance," to allow for a "reasonable profit," and with due consideration given to all relevant factors, including judgment. See §§ 10–4–401(1) and 10–4–403(2)(a), C.R.S. (1994 Repl.Vol. 4A).

Even if we assume the commissioner could have modified the filing to apply to all outstanding policies, such a change in application would have required other changes in the filing as well since, as the record indicates, the specific rate reductions proposed by NCCI were based in part on consideration of when and for which policies the new rates would become effective. See also § 10–4–405(2)(a) (filing must include proposed effective date). Specifically, application of new rates to all outstanding policies on the effec-

tive date would have resulted in smaller rate reductions for many policy holders and increased administrative costs.

As indicated by testimony at the public hearing and in the commissioner's order, no system of applying rates can benefit all parties in all situations. For example, if, in contrast to the situation here, an *increased* rate were applied only to new and renewal policies, petitioners and others who had recently renewed would have been competitively advantaged relative to policy holders who renewed soon after the effective date.

And, applying rate changes to all outstanding policies, as petitioners propose, would disadvantage either insurers or policy holders, depending on the direction in change of the rate. If rates were reduced, insurers would be disadvantaged unless the amount of reduction were adjusted to compensate. In contrast, if a rate increase were applied to all outstanding policies, it would disadvantage policy holders. *See* § 10–4–416, C.R.S. (1994 Repl.Vol. 4A) (statute currently precludes insurers from applying rate changes that would increase rates during a policy holder's contract year).

Thus, although application of new rates only to new and renewal policies effectively differentiates among policy holders based on their renewal date, the rates are not unfairly discriminatory in derogation of the statute.

### 2.

Secondly, petitioners have not asserted grounds under the equal protection clause which would justify a hearing.

■ Equal protection requires that government treat similarly situated parties in a similar manner. When, as here, neither a suspect classification nor a fundamental right is at issue, disparate treatment of similarly situated parties does not violate equal protection if the disparate treatment is rationally related to a legitimate government objective. *See Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo.1996).

■ Here, we assume without deciding that petitioners are similarly situated to employers whose policies allow them to take advantage of the new rates soon after the

rates become effective. Even so, application of new rates only to new or renewal policies does not violate equal protection because it promotes at least three legitimate government objectives: It avoids interference with existing contracts, affords both insurers and policy holders predictability, and avoids administrative problems and expenses.

Specifically, petitioners and other outstanding policy holders have contracted for a particular premium for a specified time period. If, as here, new rates are applied only to policies as they are created or renewed, the parties to the contract—both insurers and policy holders—are assured of their contract rate until their contract expires regardless of whether filing approval implements a new rate which is higher or lower than their contract rate.

Further, this application of new rates—the "standard method" for implementing rating changes in Colorado, according to the commissioner—affords policy holders predictability for calculating business expenses. *See National Auto. Underwriters Ass'n v. District Court*, 160 Colo. 467, 418 P.2d 52 (1966); *State Farm Mutual Automobile Insurance Co. v. Barnes*, 41 Colo.App. 380, 585 P.2d 929 (1978). Moreover, the record indicates that application of new rates as policies are initiated or renewed avoids the considerable administrative burden of mid-term readjustment of the rates on all outstanding policies.

Thus, the commissioner's approval of the rate filing does not violate the equal protection clause merely because it results in different rates being charged to employers of the same class until all outstanding policies have been renewed.

### II.

■ Petitioners next contend that, in denying them a hearing, the commissioner deprived them of property without due process of law. Specifically, petitioners argue that failure of the commissioner to apply the new rate to their policy deprived them of about $180,000—the difference in their insurance premiums under the old and new rates—putting them at a competitive disadvantage in their industry. Petitioners assert that this

was a deprivation of property and, thus, argue that due process requires they be afforded an adjudicative hearing. We disagree.

■ Principles of due process dictate that, except in limited cases demanding prompt action, deprivation of property must be preceded by notice and an opportunity for a hearing appropriate to the nature of the case. *Adams County School District No. 50 v. Dickey,* 791 P.2d 688 (Colo.1990); Colo. Const. art. II, § 25.

However, to prevail on a procedural due process claim, petitioners must first establish that they had a constitutionally protected entitlement to receive the lower insurance rate or maintain competitive parity with other employers. *See Colorado Compensation Insurance Authority v. Nofio,* 886 P.2d 714 (Colo.1994) (property interest is an entitlement stemming from independent source such as state law, not a mere expectation). But, while the insurance statute may create a substantive right to a fair insurance rate, we perceive no basis for petitioner's claim of entitlement to a particular insurance rate. *Cf. Public Service Co. v. Public Utilities Commission,* ·653 P.2d 1117 (Colo.1982) (recognizing entitlement to utility service, but declining to find entitlement to continued service at the same price).

Even if we assume that petitioners have been deprived of a property interest by not having the rate change applied to all outstanding policies, any such deprivation resulted, not from an agency action directed specifically to petitioners and their circumstances, but rather from the commissioner's approval of the rate filing. And, as discussed, the commissioner issued the rate approval order using a quasi-legislative process. While the rate approval process afforded here included a public hearing, neither the statutes, *see* §§ 10–4–406(3) and 10–4–407(1), C.R.S. (1994 Repl.Vol. 4A), nor the Constitution requires notice and a hearing when an administrative agency is acting in a quasi-legislative capacity. *Cottrell v. City & County of Denver, supra.*

Moreover, whether or not a public hearing is held as part of the quasi-legislative process, the statute provides for an individual hearing if an aggrieved party asserts grounds that would justify such a hearing. Since, as discussed, the commissioner did not arbitrarily deny petitioners' request, this process was satisfied.

To the extent that petitioners argue that conditioning an individual hearing on a finding of adequate grounds does not provide petitioners with adequate process, we also disagree.

■ Whether or not adequate process has been afforded under either the federal or Colorado constitutions is determined by the test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). In evaluating the procedure provided, the court must consider (1) the importance of the individual interest at stake; (2) the degree to which the proposed procedures will lessen the risk of an erroneous deprivation of the individual's property; and (3) the weight of the governmental interest in retaining the challenged procedures, including the interest in avoiding increased administrative and fiscal burdens. *See People v. Kibel,* 701 P.2d 37 (Colo.1985).

■ Here, we have assumed without deciding that petitioners have a property interest that will be affected. And, as discussed, there are only three prerequisites for a hearing. The only one at issue here is whether an aggrieved person should be afforded a quasi-judicial hearing regardless of whether he or she has asserted grounds to justify a hearing.

When a petitioner cannot assert any grounds to justify a hearing, the risk of an erroneous deprivation of rights is, by definition, minimal. Further, the fiscal and administrative burden of requiring an individual hearing for all parties aggrieved by an administrative order, regardless of whether grounds can be asserted, would be substantial.

Thus, we perceive no violation of petitioners' due process rights by requiring, as a threshold matter, that petitioners assert grounds that would justify a hearing.

## III.

Petitioners finally contend that the commissioner's order unconstitutionally denied them a judicial remedy for substantive rights established under the insurance code. Specifically, petitioners argue that the General Assembly created a substantive right for policy holders by providing in § 10–4–403(1) that the commissioner shall not approve rates which are excessive, inadequate, or unfairly discriminatory, and that they were denied judicial review of an administrative decision that affected that right when the commissioner denied them a hearing. We disagree.

As petitioners contend, Colo. Const. art. II, § 6 provides a procedural right to a judicial remedy whenever the General Assembly creates a substantive right. *Allison v. Industrial Claim Appeals Office*, 884 P.2d 1113 (Colo. 1994). But, even assuming that § 10–4–403(1) has created a substantive right as petitioners assert, nevertheless, we perceive no denial of access to the courts.

Section 10–4–407(5), C.R.S. (1994 Repl.Vol. 4A) specifically provides that: "[A]ny final action of the commissioner ... shall be subject to judicial review by the court of appeals." Thus, the commissioner's order approving the rate filing as well as his denial of petitioners' request for a hearing are subject to that review. *See Carroll v. Barnes, supra.* Furthermore, had a hearing been held and petitioners been dissatisfied with the commissioner's decision, it too would have been a final order subject to judicial review, pursuant to § 10–4–407(5).

Accordingly, the order of the commissioner is affirmed.

BRIGGS and TAUBMAN, JJ., concur.